THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION

CIVIL CASE NO. 1:10cv002

| | |
|---|---|
| JOHN C. RICKMAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | **MEMORANDUM OF** |
| vs. ) | **DECISION AND ORDER** |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

**THIS MATTER** is before the Court on the Plaintiff's Motion for Summary Judgment [Doc. 10] and the Defendant's Motion for Summary Judgment [Doc. 15].

## I. PROCEDURAL HISTORY

Plaintiff John Rickman protectively filed an application for a period of disability and disability insurance benefits, and for Supplemental Security Income benefits on September 9, 2002, alleging that he had become disabled as of August 19, 2002. That applicant was denied initially on January 9, 2003, and Plaintiff did not file a request for reconsideration. [Transcript ("T.") 12]. On May 9, 2006, Plaintiff protectively filed another application for a period of

disability and disability insurance benefits, alleging disability beginning April 20, 2006. [T. 93]. Plaintiff later amended his alleged onset date to April 30, 2007. [T. 182]. The Plaintiff's application was denied initially and on reconsideration. [T. 72-5, 76-9, 82-4]. A hearing was held before Administrative Law Judge (ALJ) Ivar Avots on October 22, 2008. [T. 41-68]. On March 2, 2009, the ALJ issued a decision denying the Plaintiff benefits. [T. 12-20]. The Appeals Council accepted additional evidence from Plaintiff, but denied his request for review, thereby making the ALJ's decision the final decision of the Commissioner. [T. 1-4]. The Plaintiff has exhausted his available administrative remedies, and this case is now ripe for review pursuant to 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

The Court's review of a final decision of the Commissioner is limited to (1) whether substantial evidence supports the Commissioner's decision, see Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971), and (2) whether the Commissioner applied the correct legal standards, Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). The Court does not review a final decision of the Commissioner de novo. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986).

The Social Security Act provides that "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). The Fourth Circuit has defined "substantial evidence" as "more than a scintilla and [doing] more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting Perales, 402 U.S. at 401, 91 S.Ct. at 1427).

The Court may not re-weigh the evidence or substitute its own judgment for that of the Commissioner, even if it disagrees with the Commissioner's decision, so long as there is substantial evidence in the record to support the final decision below. Hays, 907 F.2d at 1456; Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

## III. THE SEQUENTIAL EVALUATION PROCESS

In determining whether or not a claimant is disabled, the ALJ follows a five-step sequential process. 20 C.F.R. §§ 404.1520, 416.920. If the claimant's case fails at any step, the ALJ does not go any further and benefits are denied. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995).

First, if the claimant is engaged in substantial gainful activity, the

3

application is denied regardless of the medical condition, age, education, or work experience of the applicant. 20 C.F.R. §§ 404.1520, 416.920. Second, the claimant must show a severe impairment. If the claimant does not show any impairment or combination thereof which significantly limits the claimant's physical or mental ability to perform work activities, then no severe impairment is shown and the claimant is not disabled. Id. Third, if the impairment meets or equals one of the listed impairments of Appendix 1, Subpart P, Regulation 4, the claimant is disabled regardless of age, education or work experience. Id. Fourth, if the impairment does not meet the criteria above but is still a severe impairment, then the ALJ reviews the claimant's residual functional capacity (RFC) and the physical and mental demands of work done in the past. If the claimant can still perform that work, then a finding of not disabled is mandated. Id. Fifth, if the claimant has a severe impairment but cannot perform past relevant work, then the ALJ will consider whether the applicant's RFC, age, education, and past work experience enable the performance of other work. If so, then the claimant is not disabled. Id.

## IV.   FACTUAL BACKGROUND

Plaintiff alleges that he is disabled as a result of injuries sustained in a motorcycle accident, chronic pain in his left leg, left hip, and right shoulder; and depression. [T. 182-83]. At the ALJ hearing, Plaintiff testified that he was

4

46 years old, had completed the ninth grade, and had obtained a GED. [T. 43-44]. His past relevant work includes work as a deputy sheriff, jailer, chief jailer, air conditioning installer, and diesel mechanic. [T. 46-50].

The medical evidence of record shows that Plaintiff sustained multiple fractures to his left lower extremity, including a left femur fracture, left tibia fracture, a distal tibial fibula fracture, a left metatarsal fracture; a puncture wound to the left foot; a laceration to the left thigh; and a right clavicle fracture in a motorcycle accident in August 2002. Plaintiff underwent multiple surgeries to repair his leg injuries, including an open reduction internal fixation with rodding and a skin graft to his left thigh. Plaintiff's fractures eventually healed, and after extensive rehabilitation and physical therapy, he regained strength and mobility in his left leg. [T. 73-243]. By November 2005, Plaintiff had returned to work full time. He also was jogging on a treadmill three times a week and riding a bicycle at medium speed two times a week for about an hour. [T. 264-65].

From 2005 through the date of the ALJ hearing, Plaintiff's primary treating physician was John Kornmayer, D.O. Throughout this period, Dr. Kornmayer prescribed Plaintiff various pain medications, including morphine, oxycontin, and hydrocodone, through a pain management program. [T. 255-273, 311-316, 322, 323-370]. On October 4, 2006, Dr. Kornmayer provided

5

a medical source statement in which he opined that Plaintiff had been unable to engage in any type of work since April 20, 2006, due to chronic pain in his right shoulder, lumbar area, left hip, and left leg resulting in marked limitation in his abilities to sit, stand, and walk. [T. 361-63].

On November 17, 2008, Dr. Kornmayer provided an opinion on Plaintiff's residual functional capacity (RFC). Providing minimal yes/no answers to questions, and only specifying that his medications caused memory and balance problems, Dr. Kornmayer concluded that Plaintiff could walk 20 feet, sit 30 minutes, stand 15 minutes, and had been disabled since April 20, 2006. [T. 368-69]. He wrote another letter confirming his opinion on May 7, 2007. [T. 367].

Plaintiff underwent a consultative examination by Ian Stamp, M.D. on July 3, 2006. Dr. Stamp's physical findings were minimal, significant only for findings of slightly decreased motor strength on flexion and extension of the left leg and complaints of pain on flexion of the left hip and knee. [282-84].

A state agency medical consultant performed an assessment of Plaintiff's physical RFC on July 25, 2006, finding that Plaintiff retained the exertional capacity to perform medium work. [T. 303-310]. This RFC assessment was affirmed by Robert N. Pyle, M.D. on October 24, 2006. [T. 321].

6

With respect to Plaintiff's mental impairments, the record shows that Plaintiff reported feeling depressed following the death of his son, but he refused therapy. [T. 262]. This was confirmed by a Report of Contact dated May 18, 2006, wherein he also reported that he initially had refused to take anti-depressants believing that his depression was something he could handle on his own. He finally began taking anti-depressants in January 2006 and reported some improvement. [T. 128].

On June 28, 2006, Plaintiff was referred by Disability Determination Services (DDS) to Dr. Carolyn G. Conroy for a consultative psychological evaluation. Plaintiff stated that he had been depressed for several years following the death of his father-in-law, father, and son, but that he was "too embarrassed" to seek mental health treatment. [T. 278-79]. Plaintiff also stated that on a typical day he would wake up, visit with the ashes of his son and father, shower, check the mail, and "pittle around the house." [T. 279]. Plaintiff's speech was low in volume, but clear and of adequate pace. His thought process was relevant, coherent, and goal directed, he denied suicidal or homicidal plans, and he was oriented to time, person, and place. Plaintiff's recent and remote memories were intact, and he was able to identify major cities and past presidents. Plaintiff had some difficulty with mathematical calculations but was able to interpret proverbs properly. Overall, Dr. Conroy

7

opined that Plaintiff was functioning within the average range of intelligence. Plaintiff was diagnosed with dysthmic disorder and was assigned a Global Assessment of Functioning (GAF) score between 50 and 55. Dr. Conroy concluded that from a psychological standpoint Plaintiff

> could probably understand, retain, and follow instructions as well as perform simple routine and repetitive tasks in a low stress environment. He could probably relate to others, although he complains of having difficulty with anger management. During this evaluation, he was in good control, and had no problems in managing frustration.

[T. 281].

On July 24, 2006, Dr. Giuliana Gage, a state agency physician, reviewed the medical evidence of record and assessed Plaintiff's mental RFC. Dr. Gage concluded that Plaintiff was capable of understanding and remembering simple tasks, maintaining concentration, persistence, and pace to perform routine, repetitive tasks, that he would have some difficulty interacting with co-workers, peers, supervisors, and clients, but that he could adapt to changes and cope with stress in a low production, low stress environment. [T. 299-302].

In addition to the medical evidence of record, Plaintiff submitted numerous letters from relatives, friends, and co-workers detailing their observations of Plaintiff's limitations. [T. 129-36; 171-81].

8

At the ALJ hearing, Plaintiff testified that he has difficulty remembering things and that he is in constant pain. He stated that he is unable to stand for more than twenty minutes, sit for fifteen minutes, and walk more than twenty feet. He reported using braces on his foot, ankle and knee as well as a cane. He reported having balance problems when his left leg gives way. [T. 53]. He stated that his right hand and fingers feel like they are in a vise and being stuck with needles. [T. 54]. He stated that his index and ring fingers often lock. [T. 54]. Plaintiff testified that he sleeps an average of one to three hours per night and that he has stabbing pain in his right collarbone, which causes headaches. [T. 55].

Plaintiff reported that he takes morphine daily. He stated that two or three times a week he experiences breakthrough pain, and on those occasions he also takes Oxycodone, which makes him itch. [T. 60-61]. He also reported using hydrocodone as well as topical creams to treat his pain. Much of his pain is under his large skin graft, however, and he cannot put any topical creams on that area. [T. 61].

With respect to activities of daily living, Plaintiff testified that his wife does all of the household chores, and that he is embarrassed by his inability to contribute. [T. 56]. Plaintiff testified that on a typical day, he starts taking his medications at 8:30 a.m. so that he may became able to move around by

9

11:30 a.m. He stated that he cannot concentrate on the television. He does not read or watch movies, or visit with family or friends. He has no hobbies. [T. 59].

Dr. Roy Sumpter testified as a vocational expert ("VE") at the ALJ hearing. In response to a series of hypothetical questions posed by the ALJ, the VE testified that there are a significant number of jobs in the national economy that could be performed by someone with Plaintiff's age, education, work history, and functional capacity. [T. 63-66].

## V. THE ALJ'S DECISION

On March 2, 2009, the ALJ issued a decision denying the Plaintiff's claim. Proceeding to the sequential evaluation, the ALJ found that the Plaintiff's date last insured was December 31, 2012 and that he had not engaged in any substantial gainful activity since April 30, 2007. The ALJ then determined that Plaintiff has the following severe combination of impairments: status post multiple left lower extremity fractures, post soft tissue injury of the left thigh, status post right clavicle fracture, and depression. The ALJ concluded that Plaintif did not have an impairment or combination of impairments that met or equaled a listing. He then determined that Plaintiff retained the residual functional capacity to perform medium work that is

limited to simple routine repetitive tasks at a low production pace with occasional interaction with coworkers, supervisors, and others. The ALJ further found that Plaintiff was a younger individual with the equivalent of a high school education who was unable to perform his past relevant work. At step five, the ALJ relied upon the VE testimony provided at the hearing to conclude that significant work existed in the national economy that Plaintiff could still perform. Accordingly, he concluded that the Plaintiff was not disabled since April 20, 2006 through the date of his decision. [T. 12-20].

**VI.    DISCUSSION**

On appeal, Plaintiff argues that the ALJ erred in his assessment of Plaintiff's credibility; that he improperly evaluated treating source evidence; that he erred in his determination of Plaintiff's residual functional capacity; and that he improperly relied on inconsistent VE testimony.

**A.    The ALJ evaluated Plaintiff's credibility pursuant to applicable law, and his findings are supported by substantial evidence.**

Plaintiff asserts that the ALJ erred in his credibility assessment by failing to address the seven lay statements submitted by Plaintiff's wife, other family members, friends, and co-workers, all of which discussed various aspects of his limitations, pain and symptoms.

The determination of whether a person is disabled by non-exertional

11

pain or other symptoms is a two-step process. "First, there must be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged." Craig v. Chater, 76 F.3d 585, 594 (4th Cir.1996) (quoting 20 C.F.R. §§ 416.929(b) and 404.1529(b)). If there is such evidence, the ALJ must then evaluate "the intensity and persistence of the claimant's pain, and the extent to which it affects [his] ability to work." Id. at 595 (citing 20 C.F.R. §§ 416.929(c)(1) and 404.1529(c)(1)).

In conducting this two-step evaluation, the ALJ recounted Plaintiff's testimony and written statements, as well as the medical evidence of record, regarding his symptoms, their duration, frequency and intensity, and the efficacy of treatment. [T. 16-17]. Specifically, the ALJ noted that Plaintiff's written statements and reports to physicians described a greater level of daily activities than his testimony acknowledged. [T. 16]. For example, Plaintiff testified at the ALJ hearing that he cannot walk more than twenty feet and requires the use of a cane. [T. 53]. Yet on May 25, 2006, Plaintiff's wife submitted a Third Party Report [T. 129-36], indicating Plaintiff could walk 50 to 100 yards. [T. 134]. On the same date, Plaintiff made the same report. [T. 142]. Plaintiff displayed normal gait and station to Dr. Conroy, and told her he

12

only occasionally used a cane.  Plaintiff further reported to his primary care physician on January 18, 2007 that he had been cutting trees [T. 342], on September 20, 2007, he reported stepping off a tailgate [T. 348].  This record evidence clearly conflicts with Plaintiff's testimony that he is severely limited in walking and provides substantial evidence for the ALJ's credibility determination.

With respect to the ALJ's consideration of the other lay statements of record, the Court finds no error.  Lay statements may be considered competent evidence only where they are consistent with the longitudinal record, and they are due great weight only where objective medical evidence is insufficient to determine disability.  Laws v. Celebrezze, 368 F.2d 640, 644 (4th Cir. 1966).  In the present case, Plaintiff's wife submitted statements describing Plaintiff's problems with balance and falling.  The medical records show, however, that Plaintiff himself did not complain of such problems to Dr. Kornmayer until 2007, in the same period where he described cutting trees and stepping off the tailgate.  As to the other lay statements, they are too conclusory to be of evidentiary value about Plaintiff's limitations.  For these reasons, the Court concludes that the ALJ did not err in disregarding the statements of Plaintiff's family, friends, and co-workers regarding their observations of his pain and limitations.

13

Further supporting the ALJ's credibility findings is that Plaintiff obtained no mental health treatment, other than medication, contrary to his and his wife's assertions of significant mental symptoms. [T. 18]. "In considering the credibility of the claimant's subjective allegations of pain, the ALJ must consider (factors which include) the extensiveness of the attempts (medical or nonmedical) to obtain relief...." McKenney v. Apfel, 38 F.Supp.2d 1249, 1259 (D.Kan. 1999)(citing Hargis v. Sullivan, 945 F.2d 1482, 1490 (10th Cir. 1991)).

In sum, the Court concludes that ALJ properly evaluated Plaintiff's subjective complaints of pain and other symptoms. It is the exclusive prerogative of the ALJ to weigh conflicting evidence, which is in abundance here, and the Court will not disturb the resulting findings. See Craig, 76 F.3d at 589.

**B. The ALJ properly evaluated treating source evidence, and his findings were supported by substantial evidence.**

Plaintiff next argues that the ALJ erred in rejecting Dr. Kornmayer's October 2006 disability opinion.

The opinion of a treating source is entitled, under certain conditions, to controlling weight in the ALJ's assessment of RFC. 20 C.F.R. § 404.1527(d)(2). In deciding the weight to attribute to any medical opinion, among the elements the ALJ may consider are the supportability of the

14

opinion through medical signs and laboratory findings, and the consistency of such opinion with the record as a whole.  Id.

In the present case, the ALJ did not afford controlling weight to Dr. Kornmayer's 2006 opinion because it was not supported by underlying treatment notes, was primarily based upon Plaintiff's subjective complaints, and was contrary to substantial evidence of record.  [T. 17]. The ALJ noted that although Dr. Kornmayer had prescribed Plaintiff pain medication for years, his prescriptions were based upon Plaintiff's subjective complaints and not upon any objective findings or diagnostic tests.  [Id.].  The ALJ also noted that despite Dr. Kornmayer's opinion that Plaintiff could not perform work related tasks [T. 360-63], Plaintiff continued to work and earned wages from substantial gainful activity until April 30, 2007. [T. 17].  There is substantial evidence in the record to support the ALJ's findings in this regard, and thus the ALJ properly weighed Dr. Kornmayer's October 2006 opinion.

There was also no error in the ALJ having disregarded Dr. Kornmayer's May 2, 2007 opinion that Plaintiff should be awarded permanent disability.  Dr. Kornmayer's opinion that Plaintiff was permanently disabled concerned an ultimate issue that is reserved to the Commissioner.  See 20 C.F.R. § 404.1527(e). "A treating physician's opinion that a claimant is disabled or cannot be gainfully employed gets no deference because it invades the

15

province of the Commissioner to make the ultimate disability determination." See Krogmeier v. Barnhart, 294 F.3d 1019, 1023 (8th Cir. 2002).

For these reasons, the Court concludes that the ALJ properly considered weighed the opinions of Plaintiff's treating physician.

**C. The ALJ properly evaluated Plaintiff's mental RFC, and his use of this RFC in hypothetical questions to the vocational expert followed applicable law and is supported by substantial evidence.**

Next, Plaintiff argues that the ALJ's mental RFC determination is not supported by substantial evidence.

The ALJ determined that Plaintiff retained the ability to perform simple, routine, repetitive tasks at a low production pace with only occasional interaction with co-workers, supervisors, and others. [T. 15]. This ALJ's mental RFC assessment is directly supported by the opinions of Dr. Conroy [T. 281] and Dr. Gage [T. 299-302], who both found Plaintiff capable of performing simple, routine, repetitive tasks with occasional interaction with others in a low stress, low production environment. Plaintiff argues that the ALJ's mental RFC determination is not supported by substantial evidence because he did not include the limitation, found by both Dr. Conroy and Dr. Gage, to work in a "low stress environment." This argument, however, is without merit. Dr. Conroy and Dr. Gage's findings that Plaintiff should be limited to work in a "low stress" environment fail to adequately describe

16

Plaintiff's mental limitations resulting from stress in vocationally relevant terms. See, e.g., Lancellotta v. Sec'y of Health & Human Servs., 806 F.2d 284, 285 (1st Cir. 1986); SSR 85-15.  At the administrative hearing, the ALJ interpreted this limitation to work in a low stress environment to mean that Plaintiff could perform work in a low production environment with occasional public contact, and he thus evaluated the evidence to determine how Plaintiff's stress would impact his ability to perform work-related functions.  [T. 63].  The ALJ's interpretation in this regard is reasonable, and his mental RFC determination is therefore supported by substantial evidence.

D. **The Court declines Plaintiff's proffer of new evidence, and finds the ALJ's reliance on VE testimony to be supported by substantial evidence.**

To demonstrate the ALJ's error in accepting the VE's testimony, Plaintiff offers excerpts of vocational testimony from the hearing transcript of a different Social Security case, Hughes v. Astrue, 1:09cv459.  The intended function of the excerpts before this Court is to impeach the VE's testimony through an offer of his allegedly contrary testimony in another matter.

The hearing transcript of the VE's testimony in an unrelated case is extra-record evidence that was not presented to the ALJ.  This Court is limited to the evidence that was before the ALJ in determining whether substantial evidence supports his decision.  Wilkins v. Sec'y, Dep't of Health & Human

17

Servs., 953 F.2d 93, 96 (4th Cir. 1991). As the hearing transcript is not a part of the administrative record and was not properly before the ALJ, it cannot constitute grounds to upset the ALJ's decision.

While Plaintiff urges the Court to consider these excerpts as new and material evidence, Plaintiff has not filed a motion seeking such consideration, but rather simply filed the excerpts as exhibits to his memorandum in support of his Motion for Summary Judgment. Even if the Court construed Plaintiff's memorandum as a motion to receive new and material evidence, Plaintiff's motion would be denied, as Plaintiff has failed to make the requisite showing to warrant remand. See Wilkins, 953 F.2d at 95-96.

Because these excerpts are the only support proffered for Plaintiff's argument that the VE provided inconsistent testimony to the ALJ, the Court concludes that this assignment of error is without merit.

## VII.   CONCLUSION

For the foregoing reasons, the Court concludes that the ALJ applied the correct legal standards, and that there is substantial evidence to support the ALJ's finding of no disability through the date of his decision.

**O R D E R**

Accordingly, **IT IS, THEREFORE, ORDERED** that the Defendant's Motion for Summary Judgment [Doc. 15] is **GRANTED**.

**IT IS FURTHER ORDERED** that the Plaintiff's Motion for Summary Judgment [Doc. 10] is **DENIED**.

A judgment shall be entered simultaneously herewith.

**IT IS SO ORDERED.**

Signed: November 8, 2011

Martin Reidinger
United States District Judge